IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIK MIGUEL MCCRAY,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 11-5706 |
| | : | |
| **DR. MARTINEZ PSYCHIATRY, et al.,** | : | |
| Defendants | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                August 23, 2012

Erik Miguel McCray, an inmate currently housed at the State Correctional Institution at Graterford, brought this action *pro se* against the prison, its psychiatrist, and other officials pursuant to 42 U.S.C. § 1983.  Mr. McCray claims that between March 2008[1] and August 2011, he was overmedicated and put through psychological stress and trauma while housed at Graterford.  The defendant psychiatrist and the Commonwealth defendants have filed two separate motions to dismiss to which the plaintiff has yet to respond.  For the following reasons, I will grant the motions to dismiss in their entirety.

**I.  BACKGROUND**

While at Graterford, Mr. McCray has been housed at different times in the mental health unit, the special needs unit, and in a psychiatric observation cell.  See Compl. at 3. He has a history of mental health problems, and alleges that he has suffered

---

[1] I note that the statute of limitations for civil rights actions is two years.  See 42 Pa.C.S. § 5524. The limitations period begins to run from the time the plaintiff knows or has reason to know of the injury which is the basis of the § 1983 action.  See Deary v. Three Unnamed Police Officers, 746 F.2d 185, 197 n.16 (3d Cir. 1984).  Here, because this action was brought on September 12, 2011, any claim occurring between March 2008 and September 12, 2009 would have been dismissed as untimely should there not have been a failure to exhaust.

psychological stress as a result of unspecified side effects of various medications between March 2008 and August 2011.  Id. at 2-3.  Mr. McCray also complains that he has been housed with other inmates who have "extreme psychological and emotional problems," and that being around them always interfered with his mental health and with his making advancements.  He alleges that all of this was done to him when he was at his worst mental state.  Id.

Mr. McCray acknowledges that he filed grievances with the Grievance Coordinator at Graterford in which he challenged this treatment, but those grievances were rejected.  He also acknowledges that he did not appeal those rejections to the Superintendent or Facility Manager at Graterford, but only to the Central Office in Camp Hill, Pennsylvania.

As relief, Mr. McCray would like to be sent to a prison in the northern half of the Commonwealth, and to receive damages in the amount of "$1.8 million for years of mental and psychological pain, anguish, trauma, torture, and stress;" and for the physical injury he suffered as a result of "being overdosed on recalled medication" that resulted in "bad side effects."

## II.  STANDARD OF REVIEW

Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleadings standards in federal civil rights actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss under Fed. R. Civ. P.12(b)(6).  Fowler v. UPMC

Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009); see also Phillips v. County of Allegheny, 515 F. 3d 224, 230 (3d Cir. 2008).

Therefore, following Twombly and Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions. Iqbal, 556 U.S. at 679. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id.; see also Phillips, 515 F.3d at 234-235. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

### III. DISCUSSION

Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under the color of state law who deprives the party of his or her constitutional rights. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be

> liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Therefore, in order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the Constitution, and (2) that the constitutional deprivation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Section 1983 does not by itself confer substantive rights, but instead provides a remedy for redress when a constitutionally protected right has been violated. Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). To determine if a person was acting under the color of state law, the court must ask whether the plaintiff's deprivation was "caused by the exercise of some right or privilege created by the State" and whether the defendant "may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

Here, the defendants argue that this action must be dismissed because Mr. McCray failed to exhaust requisite available administrative remedies for the claims he asserts. I must agree.

Under the Prison Litigation Reform Act, a prisoner must exhaust a correctional facility's administrative remedies before he can initiate a Section 1983 action in federal court regarding the facility's conditions. The PLRA states:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983) or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available have been exhausted.

42 U.S.C. § 1997e(a).  The PLRA applies to any claim that arises in the prison setting.  See Porter v. Nussle, 534 U.S. 516, 532 (2002) (the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong). Furthermore, Congress "has provided in [the PLRA] that an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues."  Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  The Third Circuit has held that the exhaustion requirement is absolute, absent circumstances where no administrative remedy is available.  See Spruill v. Gillis, 372 F.3d 218, 227-228 (3d Cir. 2004); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000).

Compliance with the PLRA's exhaustion requirement is mandatory, and is not excused even if the procedures do not permit the same relief as that which can be awarded in federal court.  Woodford v. Ngo, 548 U.S. 81, 88 (2006).  Moreover, the prisoner must properly exhaust, meaning that he "must complete the administrative review process in accordance with the applicable procedural rules," thereby securing a disposition on the merits.  Id. at 88, 93; see also Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (a prisoner must pursue his claim to the highest level of the administrative process before filing suit).

The inmate grievance procedure of the Commonwealth's Department of Correction is outlined in DC-ADM-804, and involves three stages of review.  See Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004).  An initial grievance must be submitted to a Grievance Coordinator within fifteen working days after the events upon which the

5

claims are based.  An inmate has five working days to appeal the Grievance Coordinator's decision to the Facility Manager or Superintendent of the prison.  Once the intermediate decision is made, the inmate has five working days from the date the decision was received to file a final appeal with the Secretary's Office of Inmate Grievances and Appeals.  Williamson v. Wexford Health Sources, Inc., 131 Fed. Appx. 888, 890 (3d Cir. 2005) (citing DC-ADM-804); see also Harris v. Armstrong, 149 Fed. Appx. 58, 59 (3d Cir. 2005) ("The three steps in the Pennsylvania grievance process are: (1) initial review of the inmate's filed grievance pursuant to DC-ADM-804 Part VI.B; (2) the first appeal from the initial review, or appeal to Facility Manager pursuant to DC-ADM-804 Part VI.C; and (3) a final appeal, the appeal to the Secretary's Office of Inmate Grievances and Appeals pursuant to DC-ADM-804 Part VI.D"); Spruill, 372 F.3d at 232; Booth, 206 F.3d at 292 n. 2.

Here, Mr. McCray has failed to exhaust properly and fully all available administrative remedies as required.  His complaint alleges that he filed his grievances to the Grievance Coordinator at Graterford which were rejected, but that he neglected to file his appeal to the Superintendent or Facility Manager at Graterford before appealing to "Camp Hill."  See Compl. at 4-5.  He improperly omitted the first appeal as outlined and required by DC-ADM-804.  Further, it is not apparent from the complaint whether Camp Hill has made a ruling on the grievances.  If Mr. McCray's appeal to Camp Hill is still pending, there can be no exhaustion of administrative remedies.  Nevertheless, because Mr. McCray failed to comply with the applicable procedural rules pertaining to inmate

grievances, his complaint must be dismissed for failure to exhaust available administrative remedies properly.

Furthermore, the defendants' motions to dismiss both offer persuasive alternative grounds for the dismissal of this complaint.  For example, the defendants all argue that the complaint fails to show the requisite personal involvement of the defendants in the alleged wrongs.  Liability in a civil rights action requires personal participation and cannot be based solely on the operation of *respondeat superior*.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Allegations of participation or actual knowledge and acquiescence must be made with appropriate particularity.  Id.  Here, the complaint alleges no particular actions or conduct on the part of the defendants that would rise to the level of personal involvement needed to state a *prima facie* claim under § 1983.  Accordingly, if Mr. McCray had exhausted his administrative remedies, his claims against the individual defendants in their individual capacities would still fail.  See Evancho v. Fisher, 423 F.3d 347, 353-354 (3d Cir. 2005) (a state actor sued in his individual capacity may not be sued for damages unless the defendant personally violated plaintiff's federal rights, actively and intentionally assisted in the violation, directed the violation, or knew that someone else was violating, or was about to violate, the plaintiff's rights and acquiesced in that violation).

The Commonwealth defendants also argue in the alternative that they are immune from suit pursuant to the Eleventh Amendment to the Constitution of the United States.  Both state and federal law establish that the Department of Corrections is entitled to this immunity because it is an administrative agency without existence apart from the

Commonwealth.  See 71 P.S. § 61; see also Lavia v. PA Department of Corrections, 224 F.3d 190, 195 (3d Cir. 2000) (the Department of Corrections shares in the Commonwealth's Eleventh Amendment immunity).  Thus, neither Graterford itself nor the individual Commonwealth defendants in their official capacities may be sued under § 1983.[2]  See Will v. Michigan Department of State Police, 491 U.S. 58, 70 (1989) (states, their agencies, and their employees in their official capacities are not considered "persons" for purposes of this statute and thus cannot be subject to claims for damages brought pursuant to § 1983).

    An appropriate Order follows.

---

[2] I note that none of the three exceptions to 11th Amendment immunity pertains here.  First, the Commonwealth has not waived its immunity or unequivocally consented to be sued in federal court.  Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000).  Second, § 1983 does not abrogate 11th Amendment immunity.  See Seminole Tribe v. Florida, 517 U.S. 44 (1996); see also Quern v. Jordan, 440 U.S. 332 (1979).  Third, in addition to injunctive relief, Mr. McCray is seeking monetary relief for events that occurred in the past.  See Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 269 (1997) (exception for where a plaintiff sues state officials in their official capacities seeking only prospective injunctive relief for a continuing violation of federal law).